UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TAREK MOHAMED KHEDR, <br> IKBAL ELSAYED ELGAZZAR, <br> and M.K., <br>     *Plaintiffs,* <br><br> v. <br><br> IHOP RESTAURANTS, LLC, et al., <br>     *Defendants.* | No. 3:16-cv-00105 (JAM) |

## ORDER DENYING MOTION TO DISMISS

This case involves a claim of unlawful discrimination by a restaurant that refused to serve an Arab-American family of practicing Muslims. Defendants have moved to dismiss the amended complaint, primarily on grounds that the amended complaint does not plausibly allege a discriminatory motive. I will deny the motion because I conclude that plaintiffs have alleged sufficient facts that give rise to a plausible claim of unlawful discrimination.

### BACKGROUND

Plaintiffs are Tarek Mohamed Khedr, Ikbal Elsayed Elgazzar, and their 12-year-old child "M.K." All three plaintiffs are Arab-Americans and live in Windsor Locks, Connecticut. The defendants are IHOP Restaurants, LLC (IHOP), Hartford Management Solutions, LLC (Hartford Management), and Richard Vasile. IHOP owns and operates franchise restaurants known as the "International House of Pancakes," and Hartford Management manages and operates an IHOP restaurant in Bloomfield, Connecticut, at which Vasile worked as the manager.

On the morning of Saturday, March 28, 2015, plaintiffs went for a meal to the IHOP restaurant in Bloomfield. Plaintiff Elgazzar was wearing a traditional Muslim Hijab. Plaintiffs checked in with the hostess, requested a window table to have breakfast, and then waited for

about 20 to 25 minutes without being seated. There were three tables waiting to be cleaned, and plaintiff Khedr politely asked the restaurant's manager—defendant Vasile—to have someone from his staff clean one of the tables.

The facts about what happened next are more than adequately alleged in the amended complaint (Doc. #27 at 6 (¶18–21)); nevertheless plaintiff Khedr's sworn statement to the Connecticut Commission on Human Rights and Opportunities (CHRO) helps paint a fuller picture of what plaintiffs allegedly experienced that day:

> The restaurant manager started to look at us up and down with anger, hate, and dirty looks because my wife was wearing a veil, as per our religion of Islam.
>
> The restaurant manager then asked us to leave the restaurant because it is a private property and a private business saying that he has the legal right to kick us out any time with or without reason. He stated that he would not serve us any food, and I asked him, 'Why sir?' He said again, 'I will not serve you or your family any food.' Furthermore, he ordered his staff (three of his waiters) not to serve 'these people' any food. The employees and customers who overheard the manager were surprised and shocked by this manager's discriminatory attitude directed at my family. I asked the manager for his name, he refused. I was speechless, embarrassed, humiliated, and insulted. I held my anger, trying to hide my feelings in front of my wife and child without saying any word or comment in response, but of course everyone around was well aware of the issue.

Doc. #30-1 at 3.[1] Vasile refused to give plaintiffs his name, and he then demanded that plaintiffs leave the restaurant.

Khedr called the police. An officer arrived, went inside the restaurant, and spoke to Vasile. The officer told plaintiffs that Vasile had the right to remove plaintiffs from the premises with or without any reason, and that Vasile had requested that plaintiffs not return to the restaurant.

---

[1] *See Colon v. Southern New England Tel. Co.*, 2009 WL 4730480, at *1 (D. Conn. 2009) ("Where a plaintiff alleges in the complaint that charges of discrimination have been filed with the CHRO and EEOC, those charges 'may be considered either as matters referenced in the complaint or as public records subject to judicial notice.'"); *Smith v. AFSCME Council 4*, 2007 WL 735815, at *1 (D. Conn. 2007) (considering CHRO complaint because referenced in complaint (citing *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000))).

On the following Monday, Khedr called IHOP's corporate telephone number to lodge a complaint. He spoke with a customer relations representative and received a case number for further follow up, but no further contact from IHOP was received. That afternoon, Khedr received a telephone call from the owner of Hartford Management. The owner asked Khedr not to take any legal action until the owner reported back to him, but no further communications were received from the owner until plaintiffs filed a complaint about two weeks later with the CHRO.

According to the amended complaint, plaintiffs "were and are still certain that[,] because they are of Arab descent and practicing Muslims, they had been the targets of racial, national origin, and religious discrimination." The amended complaint alleges several causes of action. Count One alleges denial of the right to make and enforce contracts and of equal benefits of the law, in violation of 42 U.S.C. § 1981.[2] Count Two alleges racial discrimination in a place of public accommodation, in violation of 42 U.S.C. § 2000a. Count Three alleges unlawful public accommodation discrimination, in violation of Conn. Gen. Stat. §§ 46a-64(a)(1) & (2). The remaining three counts of the amended complaint allege state law claims of intentional infliction of emotional distress, tortious misconduct, and breach of contract.

## DISCUSSION

The background principles governing a Rule 12(b)(6) motion to dismiss are well established. The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless its factual recitations state a claim to relief that is plausible on its face. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770

---

[2] The charging language of Count One alleges discriminatory interference with plaintiffs' ability to make and enforce contracts, notwithstanding its citation to a different statutory provision.

3

F.3d 170, 177 (2d Cir. 2014) (same). The Supreme Court has elaborated as follows on the "plausibility" standard for evaluating a motion to dismiss:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). Naturally enough, because the focus of "plausibility" review is on what *facts* a complaint alleges, a court is "not bound to accept as true a legal conclusion couched as a factual conclusion" or "to accept as true allegations that are wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014).

Plaintiffs in this action are proceeding *pro se*. It is well established that a *pro se* plaintiff's complaint should be construed liberally and interpreted to raise the strongest arguments that its wording suggests. *See, e.g.*, *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014); *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

### *Discrimination Claims*

Defendants move to dismiss plaintiffs' discrimination claims on the ground that the amended complaint does not adequately allege facts to support their claims of a discriminatory motive. I do not agree. The amended complaint alleges that plaintiffs were very identifiably of a protected class: plaintiff Elgazzar was wearing a traditional Muslim Hijab. Plaintiffs were ignored by restaurant waitstaff for 20 to 25 minutes, despite the availability of seating space. When Khedr politely asked Vasile for a table to be cleaned so that the family could be seated, Vasile reacted with extreme hostility and by looking up and down at Elgazzar, before declaring that the restaurant was private property and that he had the legal right to remove plaintiffs for no

4

reason at all. These facts—if true—allow for a reasonable inference that plaintiffs were mistreated and that the reason for their mistreatment was because of their physical appearance as a family of Arab-Americans and practicing Muslims. Plaintiffs have adequately alleged facts suggesting discriminatory motive that give rise to plausible grounds for relief.

Defendants argue that the amended complaint does not allege that they knew plaintiffs' races, religion, or national origin. But the amended complaint in fact alleges that plaintiff Elgazzar was wearing a traditional Muslim Hijab from which such knowledge could easily and plausibly be inferred.

Defendants argue that "plaintiffs' race or religion were never referred to when they were allegedly refused service." Doc. #28 at 8. But the fact that defendants were not so blatantly discriminatory as to engage in name-calling or to verbalize the reason that plaintiffs were denied service does not foreclose plaintiffs' claim. Because discrimination may be far more subtle and may "often [be] accomplished by discreet manipulations and hidden under a veil of self-declared innocence," it remains the case that "[a] victim of discrimination is therefore seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence." *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991).

Defendants next argue that a discrimination complaint "must plead that other individuals not of her or his protected class were treated differently." Doc. #28 at 6. This argument reflects a basic misunderstanding of discrimination law. Although a complaint must allege facts sufficient to establish or infer a discriminatory motive, it need not further identify or allege that other persons were treated differently. If, for example, *all* of IHOP's putative lunchtime customers were of minority races and religions and if *all* of them had been refused service for no apparent reason, a discriminatory motive could be inferred notwithstanding the absence of proof that any

5

of the customers were treated differently from one another. By the same token, if a business has only one employee, that one employee is of a minority race, and the boss of the business fires the minority employee for reasons that he later concedes were because of that employee's minority status, it would be no defense to a claim of discrimination that—because the business had only one employee—there was no discrimination because there was no proof that the boss had treated any other employee more favorably.

To be sure, discrimination claims are often supported by evidence that other similarly situated persons outside of a protected group were treated differently.[3] Such indirect proof of discriminatory motive may be vitally important to establishing motive in the absence of direct evidence of discriminatory animus. But to conclude that proof of differential treatment of others may be relevant and helpful to proving discriminatory motive does not mean—as defendants suggest—that such proof is categorically necessary to sustain a discrimination claim.[4] In short, the amended complaint alleges facts suggestive of discriminatory motive that give rise to plausible grounds for relief with respect to plaintiffs' discrimination claims.

---

[3] *See, e.g.*, *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (noting that Title VII "plaintiff *may* raise such an inference [of discrimination] by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group" (emphasis added)); *Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274, 291 (S.D.N.Y. 2008) (noting that "a discriminatory animus may be proven both by direct and by indirect evidence, for example, by showing that similarly-situated male [colleagues] were treated more favorably than plaintiff"). Not to the contrary is the sole case that has been cited by defendants on this point, because that case makes clear that evidence of differential treatment is not required to support a claim of discrimination if there is otherwise direct evidence of animus. *See Goonewardena v. N. Shore Long Island Jewish Health Sys.*, 2012 WL 7802351, at *9 (E.D.N.Y. 2012) (noting that "*[f]or example*, plaintiff does not allege that any other individuals who were not of plaintiff's protected class, i.e. not of the same race, color, creed, national origin, or ability as plaintiff, were given a different medication regimen" and that, "*[i]n addition*, plaintiff alleges no facts such as comments or actions that would support a discriminatory motive" (emphasis added)), *report and recommendation adopted*, 2013 WL 1211496, *aff'd*, 597 Fed. Appx. 19 (2d Cir. 2015).

[4] Because the motion to dismiss does not raise other grounds for dismissal of the discrimination claims or grounds to differentiate between the relative culpability of each of the three defendants, I will not address any such potential issues at this time.

*Intentional Infliction of Emotional Distress*

Defendants seek dismissal of plaintiffs' claim of intentional infliction of emotional distress. A plaintiff claiming intentional infliction of emotional distress must establish four elements:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

*Perez-Dickson v. City of Bridgeport*, 304 Conn. 483, 526–27 (2012). Although the requisites for such a claim are high, if it is true that plaintiffs were refused service for racially and religiously discriminatory reasons as they claim, then it is plausible to conclude at this initial pleading stage that they were the victims of intentional infliction of emotional distress.

*Other Claims*

Defendants also seek dismissal of plaintiffs' claims of tortious misconduct and breach of contract. I decline to address the defendants' arguments because defendants have failed to elaborate on or support them with any citations to authority. Additionally, defendant IHOP seeks dismissal of the entire amended complaint because plaintiffs did not allege facts sufficient to hold IHOP responsible for the other defendants' conduct. While there may be merit to the assertion that IHOP cannot be held responsible for the conduct of a franchisee or such franchisee's employees; *see Feacher v. Intercontinental Hotels Grp.*, 563 F. Supp. 2d 389, 405–406 (N.D.N.Y. 2010); I decline to address the claim at this time because IHOP, too, fails to support this argument with elaboration or any citations to authority.

## CONCLUSION

The motion to dismiss (Doc. #28) is DENIED.

It is so ordered.

Dated at New Haven, Connecticut, this 22nd day of June 2016.

 /s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge
